NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM VÁZQUEZ,<br><br>    Plaintiff,<br><br>v.<br><br>THE VILLAGE OF BENSENVILLE,<br>OFFICER RICHARD LAPORTE,<br>OFFICER KEVIN DRISCOLL,<br>OFFICER SAUL HERRERA, and<br>DETECTIVE MIKE PTAK,<br><br>    Defendants. | No. 12 C 09759<br><br>Chief Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Vázquez brings this action against the Village of Bensenville (the "Village") as well as Officer Richard LaPorte, Officer Kevin Driscoll, Officer Saul Herrera, and Detective Mike Ptak (collectively, the "Defendant Officers"), alleging deprivation of his constitutional right to equal protection under the law in violation of 42 U.S.C. § 1983. Presently before the Court is Defendants' motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

### RELEVANT FACTS

Vázquez is a resident of the Village. (R. 25, Second Am. Compl. ¶ 4.) He has lived at Mason Manor Condominiums (the "Condominium") for over five years and holds a position with the Mason Manor Condominium Association (the "Association"). (*Id.* ¶ 13.) From 2010 to the present, Vázquez recommended that the Association perform several repairs and improvements to the building, and the Association consequently imposed fees and special

assessments upon unit owners to fund the improvements. (*Id.* ¶ 16.) Vázquez alleges that unit owners and residents Pawel Kruk, Agnieszka Kruk, Iowna Plaza, and Ernest Skotnicki (collectively, the "Residents") were upset by the fees and special assessments and began a campaign of harassment against him and other Association members in 2010. (*Id.* ¶ 17.) Pawel Kruk and Agnieszka Kruk live together in a unit one or both of them own in the Condominium. (*Id.* ¶ 14.) Iowna Plaza and Ernest Skotnicki live together in a unit Plaza owns in the Condominium. (*Id.* ¶ 15.)

Since 2010, the Residents have made several complaints about Vázquez to various Village departments, including the Police Department. (*Id.* ¶ 20.) Police officers, including the Defendant Officers, often came to the Condominium in response to the Residents' complaints, which Vázquez alleges were "false and baseless" as a result of the Residents' animosity towards him. (*Id.* ¶¶ 20, 23-24.) In response to the volume of complaints, Officer Herrera contacted the Association's then-president, Scott Beaderstadt, several times in 2012 to request an election of the Association's members. (*Id.* ¶ 21.) Officer LaPorte went to the Condominium in late 2011 and told Vázquez that if the police received more calls or reports involving the Condominium, they would be "pinned on [Vázquez.]" (*Id.* ¶¶ 31-32.) Vázquez alleges that Officer LaPorte's statement indicated that Vázquez would not be treated in the same manner as his neighbors. (*Id.* ¶ 33.)

Vázquez alleges that the Defendant Officers filed criminal charges against him without following the appropriate investigative protocol. On January 10, 2012, Pawel Kruk reported to Officer Herrera that Vázquez was "pounding on Kruk's door and looking through the peep hole." (*Id.* ¶ 34.) Vázquez was subsequently arrested and charged with disorderly conduct. (*Id.*) Vázquez alleges that Officer Herrera failed to adequately investigate the complaint before filing

charges, as neither Vázquez nor Piort Zaranski, the person he was with that day, were interviewed by Officer Herrera. (*Id.* ¶ 36.) Vázquez alleges that he did not engage in disorderly conduct and that he and Zaranski were instead gathering signatures from the residents for a City of Chicago window and door replacement project. (*Id.* ¶¶ 35-36.) On July 1, 2012, Plaza and Skotnicki reported to a police officer that Vázquez had pushed and threatened to kill Plaza. (*Id.* ¶ 38.) Vázquez was arrested later that day by the same officer and charged with two counts of battery. (*Id.*) Vázquez maintains that he did not commit battery or threaten to kill Plaza. (*Id.* ¶ 39.) On September 26, 2012, Pawel Kruk and his minor son reported to a police officer that Vázquez had threatened to kill them at an Association meeting on September 20, 2012. (*Id.* ¶ 41.) Vázquez was subsequently charged, pursuant to a complaint prepared by Detective Ptak, with aggravated assault and assault. (*Id.* ¶ 41.) Vázquez again alleges that the incident was inadequately investigated before charges were filed as "several people present at the meeting . . . would have told [Detective Ptak] that Vázquez made no threats to Pawel Kruk or his son." (*Id.* ¶ 43.) Pursuant to a complaint prepared by Officer Driscoll on May 29, 2013, Vázquez was charged with disorderly conduct for purportedly making vulgar statements and gestures towards Agnieszka Kruk and pounding on Pawel Kruk's door on March 25, 2013. (*Id.* ¶ 45.) Before filing charges, Officer Driscoll did not speak with Vázquez or the friend he was with that day. (*Id.* ¶ 47.) Vázquez alleges that his friend would have told Officer Driscoll that Vázquez had no interaction with the Kruks on March 25, 2013. (*Id.*)

Finally, on July 1, 2013, Vázquez was charged with battery in another complaint prepared by Officer Driscoll relating to a June 25, 2013 incident involving Skotnicki. (*Id.* ¶ 49.) Vázquez denies committing battery upon Skotnicki that day, (*id.* ¶ 50), and he contends that Skotnicki has previously made false statements to the police: Vázquez alleges that on December

3

21, 2010, Skotnicki came into his apartment and physically assaulted him without provocation, (*id.* ¶ 25). Skotnicki then left and falsely reported to the Police Department that he was assaulted by Vázquez in the Condominium's stairwell. (*Id.* ¶ 26.) A police officer investigated the incident and arrested Skotnicki for assault. (*Id.* ¶ 29.) On June 25, 2013, Skotnicki allegedly emerged from his unit and attempted to punch Vázquez in the hallway. (*Id.* ¶ 60.) On June 27, 2013, Vázquez and Beaderstadt went to the Police Department and reported the incident to Officer Driscoll and a sergeant. (*Id.* ¶ 61.) Officer Driscoll told Vázquez that Skotnicki claimed that Vázquez had punched him. (*Id.* ¶ 62.) Vázquez denied this and alleged that his hands were full carrying groceries. (*Id.*) Vázquez also reminded Officer Driscoll about Skotnicki's previous false assault claim on December 21, 2010. (*Id.*) In response, Officer Driscoll stated that the "past is the past" and brought up the frequent complaints Skotnicki and Pawel Kruk made against Vázquez. (*Id.* ¶ 63.) Beaderstadt told Officer Driscoll that Skotnicki should not be believed because he had claimed publicly that he would continue to file false reports about Vázquez until Vázquez resigned from the Association. (*Id.*) In response, Officer Driscoll told Vázquez "that maybe [Vázquez] should move and that the Village of Bensenville Police Department [was] 'tired' of all the calls about [Vázquez]." (*Id.*) Further, Officer Driscoll stated that Skotnicki's wife, Plaza, "backed up [Skotnicki's] story, and therefore it was 'two against one.'" (*Id.*) Officer Driscoll subsequently refused to file criminal charges against Skotnicki and instead filed a battery complaint against Vázquez. (*Id.* ¶ 64.)

Vázquez denies all charges in these five incidents. (*Id.* ¶¶ 35, 39, 42, 46, 50.) Aside from the July 1, 2012 and June 25, 2013 incidents, he was either found not guilty or his criminal charges were dismissed *nolle prosequi*. (*Id.* ¶¶ 37, 44, 48.) On April 22, 2013, Vázquez was tried for the July 1, 2012 incident. (*Id.* ¶ 40.) He was found not guilty of the count one battery

charge of causing bodily harm, but guilty of the count two battery charge of making physical contact of an insulting or provoking nature. (*Id.*) Vázquez has appealed the conviction. (*Id.*)

Vázquez alleges that, in contrast to their reaction to complaints against him, the Defendant Officers failed to investigate or file criminal charges in complaints he filed. In addition to the June 2013 incident with Skotnicki, Vázquez and other Condominium residents reported that Skotnicki had admitted to breaking a Condominium window in the summer of 2010. (*Id.* ¶ 53.) Skotnicki was not charged. (*Id.* ¶ 54.) Additionally, in June 2012, Vázquez heard a car tire pop, the rear common door to the building hallway open, and someone enter the apartment of Plaza and Skotnicki. (*Id.* ¶ 57.) The next morning, he discovered that his two front tires were slashed. (*Id.* ¶ 58.) Vázquez reported this to the Police Department, but no one was charged for the damage. (*Id.* ¶¶ 58-59.)

## PROCEDURAL HISTORY

Proceeding *pro se*, Vázquez filed a three-count complaint on December 7, 2012, (R. 1, Compl.), which the Court dismissed without prejudice on March 27, 2013, (R. 6, Min. Entry). Vázquez filed his first amended *pro se* complaint on May 1, 2013, (R. 8, First Am. Compl.), which the Court also dismissed without prejudice on May 29, 2013, (R. 15, Min. Entry). After being appointed counsel, Vázquez filed a second amended complaint on July 31, 2013. (R. 25, Second Am. Compl.) In Count I, Vázquez alleges a violation of his constitutional right to equal protection under the law against Officer Driscoll, Officer Herrera, and Detective Ptak, (*id.* ¶¶ 66-76); in Count II, Vázquez alleges a conspiracy to violate his equal protection against Officer Driscoll, Officer Herrera, Detective Ptak, and Officer LaPorte, (*id.* ¶¶ 77-80); and in Count III, Vázquez alleges a violation of his constitutional right to equal protection under the law against the Village, (*id.* ¶¶ 81-86).

On October 22, 2013, Defendants moved to dismiss the second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 38, Defs.' Mot. Dismiss.) Vázquez responded to Defendants' motion to dismiss on November 27, 2013, (R. 45, Pl.'s Resp.), and Defendants replied on December 11, 2013, (R. 46, Defs.' Reply). Defendants' motion to dismiss is presently before the Court.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the non-movant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Detailed factual allegations" are not required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

**ANALYSIS**

I.  **Whether Vázquez has sufficiently pleaded a "class-of-one" claim (Count I)**

In Count I, pursuant to 42 U.S.C. § 1983, Vázquez alleges that Officer Driscoll, Officer Herrera, and Detective Ptak (collectively, the "Arresting Officers") violated his constitutional right to equal protection under the law. (R. 25, Second Am. Compl. ¶¶ 73-76.) In order to successfully state a claim under section 1983, a plaintiff must plead two elements: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003) (citations omitted). The Equal Protection Clause of the Fourteenth Amendment "guard[s] against state and local government discrimination on the basis of . . . class-based distinctions." *Geinosky v. City of Chi.*, 675 F.3d 743, 747 (7th Cir. 2012). It "has also come to be understood to protect individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." *Id.* To state this kind of "class-of-one" equal protection claim, a plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Seventh Circuit has not resolved its split over whether a plaintiff alleging a class-of-one equal protection claim must establish animus or improper motive. *Knaus v. Town of Ledgeview*, No. 13-2956, 2014 WL 1378128, at *3 (7th Cir. Apr. 9, 2014) (citing *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc)). In *Del Marcelle*, the Seventh Circuit, sitting en banc, split three ways on the issue:

7

> Some members of the court thought the plaintiff should be required to plead and prove that the disparate treatment was motivated by personal ill will or other illegitimate purpose; that is, a purpose unrelated to public duty. *See* [*Del Marcelle*, 680 F.3d at 889] (Posner, J.) (plurality opinion) (writing for four members of the court). Others expressed the view that personal animus or other improper motive is not an element of the claim but just one way to prove that the defendant's action lacked a rational basis. *See id.* at 913-14 (Wood, J., dissenting) (writing for five members of the court). One member of the court concluded that motive or intent "has no role at all" in class-of-one litigation. *See id.* at 900 (Easterbrook, C.J., concurring in the judgment).

*D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1308 (2014). "At a minimum, however, [a plaintiff] must show that [he] was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Those requirements are well-established." *Billington v. Vill. of Armington, Ill.*, 498 F. App'x 572, 574 (7th Cir. 2012) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012); *Olech*, 528 U.S. at 563-64).

### A. Whether Vázquez was intentionally treated differently from others similarly situated

Defendants argue that Vázquez has failed to sufficiently plead that "he has been intentionally treated different from others similarly situated[.]" (R. 38-2, Defs.' Mem. at 13.) A plaintiff and his comparators are similarly situated when they are "identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). While the determination of whether a comparator is similarly situated is usually a question for the fact-finder, a complaint is subject to dismissal when the plaintiff has provided comparators in his complaint and has "failed to allege facts tending to show that [he] was similarly situated to any of the comparators." *Id.*

Here, Vázquez alleges that the Residents are similarly situated to him. (R. 25, Second Am. Compl. ¶ 73.) Defendants do not challenge Vázquez's assertion that the Residents are similarly situated. The Residents and Vázquez all live in the Condominium. (*Id.* ¶¶ 13-15.) The Residents and Vázquez were subject to the Association's imposition of fees and special assessments. (*Id.* ¶¶ 16-17.) The Residents and Vázquez filed complaints against each other with the Police Department. (*Id.* ¶¶ 20, 23, 54, 58, 61.) Accordingly, the Court finds that Vázquez has sufficiently pleaded that the Residents are similarly situated to him. *See Muczynski v. Lieblick*, No. 10-CV-0081, 2012 WL 5470738, at *2-3 (N.D. Ill. Nov. 8, 2012) (allegations that the plaintiff "was similarly situated to other citizens who were stopped and investigated by police officers" were sufficient to survive a motion to dismiss); *Messner v. Calderone*, No. 07 C 893, 2008 WL 696909, at *4 (N.D. Ill. Mar. 13, 2008) ("[a]lthough [the plaintiff] must eventually meet a heavy burden in establishing that such individuals [were] actually similarly situated," allegations that "all other residents, property owners, and business licensees" were similarly situated were "adequate at [the motion to dismiss] stage to state an Equal Protection claim under a class of one theory" (internal citations omitted)).

Vázquez alleges that the Arresting Officers treated him differently from the similarly-situated Residents because he was "subject to arrest and criminal charges based upon the mere reports of unreliable witnesses without adequate investigation by the police," while his "legitimate complaints" and his "accounts of events" were ignored. (R. 25, Second Am. Compl. ¶ 73.) Defendants argue that Vázquez's "allegations do not meet the requirement of being more than conclusory." (R. 46, Defs.' Reply at 8.) Vázquez alleges that of the six complaints the Residents made against him—for incidents on December 21, 2010; January 10, 2012; July 1, 2012; September 20, 2012; March 25, 2013; and June 25, 2013—the Arresting Officers filed

charges against him in all except the December 21, 2010 incident. (R. 25, Second Am. Compl. ¶¶ 25-26, 34, 38, 41, 45, 49, 64.) Conversely, of the three complaints made by Vázquez against Skotnicki—for incidents in the summer of 2010, in June 2012, and on June 25, 2013—Vázquez alleges that the Arresting Officers did not file any charges against Skotnicki. (*Id.* ¶¶ 53-54, 58-59, 64.)

Additionally, Vázquez alleges that when conflicting versions of the incidents were presented, the Arresting Officers weighted the Residents' and their witnesses' versions more favorably than Vázquez's and his witnesses'. (*Id.* ¶¶ 36, 43, 47, 63.) For example, Vázquez alleges that he reported to Officer Driscoll that Skotnicki attempted to punch Vázquez in the hallway on June 25, 2013. (*Id.* ¶¶ 60-61.) Despite Beaderstadt telling Officer Driscoll that "Skotnicki should not be believed because he has made it public knowledge that [Vázquez] must resign from the Association or Skotnicki [would] continue to file false police reports about [Vázquez]," Officer Driscoll told Vázquez that it was "two against one" since Plaza backed up Skotnicki's story. (*Id.* ¶ 63.) Vázquez also alleges that the Arresting Officers failed to interview witnesses that could corroborate Vázquez's denial of three incidents for which he was charged. (*Id.* ¶¶ 36, 43, 47.) For instance, on January 10, 2012, Pawel Kruk reported to Officer Herrera that Vázquez was "pounding on Kruk's door and looking through the peep hole." (*Id.* ¶ 34.) Officer Herrera failed to interview Vázquez or the friend he was with at the time of the alleged incident before filing charges against Vázquez. (*Id.* ¶ 36.) On September 26, 2012, Pawel Kruk and his minor son reported to the Police Department that Vázquez had threatened to kill them both at an Association meeting. (*Id.* ¶ 41.) Detective Ptak failed to interview several people present at the meeting before filing charges against Vázquez. (*Id.* ¶ 43.) Finally, Officer Driscoll charged Vázquez with disorderly conduct for allegedly making vulgar statements and

gestures towards Agnieszka Kruk and pounding on Pawel Kruk's door on March 25, 2013, but Officer Driscoll did not interview Vázquez or the friend he was with that day before charging him. (*Id.* ¶¶ 45, 47.)

These allegations are not merely conclusory, but allege specific instances of disparate treatment. Viewing all these facts in the light most favorable to Vázquez, the Court finds that Vázquez has sufficiently pleaded facts to support his allegations that the Arresting Officers "have enforced the law one-sidedly and have not been impartial and evenhanded in arbitrating the disputes between [Vázquez] and [the Residents]." (*Id.* ¶ 67.) Seeking to avoid this result, Defendants argue that Skotnicki's arrest for the December 21, 2010 incident undermines Vázquez's class-of-one claim because Skotnicki's arrest demonstrates that Skotnicki was not treated more favorably than Vázquez. (R. 46, Defs.' Reply at 8.) Vázquez does not allege, however, that the unequal treatment between him and Skotnicki stems solely from arrests made. He alleges that the unequal treatment also stems from the way the Arresting Officers handled and investigated complaints made by the Residents against Vasquez compared to complaints made by Vazquez against the Residents. (R. 25, Second Am. Compl. ¶¶ 25-65). Accordingly, the Court finds that Vázquez has plausibly alleged that the Arresting Officers intentionally treated him differently from the Residents.

### B. Whether there was a rational basis for the differences in treatment between Vázquez and the Residents

Defendants argue that Vázquez has failed to show that there was no rational basis for the alleged differences in treatment between him and the Residents. (R. 38-2, Defs.' Mem. at 13.) A plaintiff bringing a class-of-one claim must allege that he was treated differently and that "there is no rational basis for the difference in treatment." *Geinosky*, 675 F.3d at 747 (finding that a plaintiff may bring a class-of-one claim "based on allegations of the irrational or malicious

11

application of law enforcement powers"). "A perplexing situation arises when a lawsuit challenging a government action subject only to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss. A class-of-one plaintiff must anticipate this dilemma." *Kopp*, 725 F.3d at 686 (internal alterations, citations, and quotation marks omitted) (quoting *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008)). To survive a motion to dismiss, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.* (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). "[T]he test for rationality does not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiffs' claim is a *conceivable* rational basis for the difference in treatment." *Id.*

Here, Vázquez alleges that the Arresting Officers' "unequal treatment of [him] has no rational reason and/or was motivated by personal animus unrelated to their official duties." (R. 25, Second Am. Compl. ¶ 74.) Defendants argue that Vázquez has alleged facts to support personal animus only against Officer LaPorte, who is not named in Count I, and Officer Driscoll. (R. 46, Defs.' Reply at 7.) They argue that Officer Driscoll's statements to Vázquez "[do] not rise to the level of more than an unfortunate flippant response" and that Vázquez's "remaining allegations of animus are conclusory" and conflate the Residents' animus against Vázquez with the Arresting Officer's motives. (*Id.*) As explained above, Vázquez is not required to show that the Arresting Officer's unequal treatment of him was motivated by personal animus. *Kopp*, 725 F.3d at 685-86. Thus, the question the Court will focus on is whether the complaint "eliminate[s] any reasonably conceivable state of facts that could provide a rational basis for" the difference in treatment between Vázquez and the Residents. *Id.* at 686 (quoting *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946-47 (7th Cir. 2009)).

Vázquez alleges that the Arresting Officers conducted inadequate investigations of complaints he and the Residents filed by favoring the Residents' versions of events and ignoring Vázquez's accounts of events and by failing to interview witnesses. (*Id.* ¶¶ 68-73.) Specifically, the Arresting Officers failed to interview witnesses before arresting Vázquez for the incidents on January 10, 2012, September 20, 2012, and March 25, 2013. (*Id.* ¶¶ 34-36, 41-43, 45-47.) Officer Driscoll arrested Vázquez for the incident on June 25, 2013 because he favored Skotnicki's and Plaza's versions of events over Vázquez's and Beaderstadt's. (*Id.* ¶¶ 60-64.) Further, the Arresting Officers did not investigate or arrest anyone for the incidents Vázquez complained about in the summer of 2010 and June 2012. (*Id.* ¶¶ 53-59.) Assuming the truth of all these facts and drawing all reasonable inferences in Vázquez's favor, the Court cannot conceive of any rational reason why the Arresting Officers consistently favored the Residents' versions of events over Vázquez's accounts, or why the Arresting Officers did not thoroughly investigate the complaints before arresting Vázquez. From Vázquez's allegations, it appears as though the Arresting Officers used a lower standard to file charges against Vázquez than against the Residents; the Court cannot hypothesize a rational reason for this disparate treatment. *See Hakim v. Osborne*, No. 13 C 50067, 2013 WL 6162563, at *3 (N.D. Ill. Nov. 22, 2013) (assuming the truth of plaintiff's allegations that defendants knowingly gave him false disciplinary tickets and finding that these allegations were sufficient to overcome the presumption of rationality and allege a class-of-one claim).

Defendants argue that the Arresting Officers exercised proper police discretion when determining who to arrest for the incidents. (R. 46, Defs.' Reply at 8.) Specifically, Defendants argue that Officer Driscroll exercised his discretion and arrested Vázquez for the June 25, 2013 incident "based on the complaints of [Skotnicki and his wife] who he apparently determined to

13

be more credible than [Vázquez]." (*Id.*) Vázquez alleges that Officer Driscoll knew that Skotnicki was not a reliable witness because Skotnicki had previously provided the police false information about another incident. (R. 25, Am. Compl. at ¶¶ 62-65.) Defendants do not provide the Court with a rational reason for why Officer Driscoll found Skotnicki to be more credible than Vázquez, and the allegations in the complaint suggest there was no rational reason. "If there was no rational basis for the treatment of the plaintiff, then the motives [of a public official] must be irrational and improper. *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013).

The Court thus finds that Vázquez has met his heavy burden of sufficiently alleging that there was no rational basis for the difference in treatment between him and the Residents. Accordingly, the Court finds that Vázquez has alleged sufficient facts to plead a class-of-one claim and thus declines to dismiss Count I.

## II. Whether Vázquez has sufficiently pleaded a claim of conspiracy among the Defendant Officers (Count II)

In Count II, Vázquez alleges that the Defendant Officers engaged in a conspiracy to deprive him of equal protection of the law. (R. 25, Second Am. Compl. ¶¶ 77-80.) Specifically, he alleges that the parties to the conspiracy—the Defendant Officers—conspired to violate the Equal Protection Clause by enforcing the law one-sidedly and not being impartial and evenhanded in handling disputes between him and the Residents. (*Id.*) Vázquez contends that the conspiracy began in October or November of 2011 with Officer LaPorte's statement that further calls "will be pinned on [Vázquez]" and lasted at least until Vázquez's June 2013 arrest. (*Id.* ¶¶ 31-33, 60-65.)

To allege a section 1983 claim for civil conspiracy, a plaintiff must show "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights."

14

*Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). A "bare allegation of conspiracy" or a "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him" is not enough to survive a motion to dismiss. *Cooney v. Rossiter*, 583 F.3d 967, 970-71 (7th Cir. 2009). Rather, a plaintiff must allege "the parties, the general purpose, and the approximate date of the agreement to form a conspiracy." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 517 (7th Cir. 2007) (citing *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002)).

Defendants argue that Vázquez's conspiracy claim should be dismissed because he has failed to allege an essential element: an express or implied agreement among the Defendant Officers to arrest Vázquez in violation of his constitutional rights. (R. 38-2, Defs.' Mot. Dismiss at 10; R. 46, Defs.' Reply at 3-4.) Defendants argue that Vázquez has only alleged that Officer LaPorte "indicated *he* would arrest [Vázquez] in the future if the police received more complaints, and that *he* would not treat [Vázquez] in the same manner as his neighbors." (Defs.' Reply at 4.) They additionally argue that Vázquez has failed to allege that Officer LaPorte made any subsequent arrests after this comment, or that the other Defendant Officers were "aware of the alleged statement or agreed to act in concert with Officer LaPorte." (*Id.*) Defendants argue that Vázquez's allegations merely establish that the Defendant Officers individually arrested Vázquez over a two-year period. (*Id.* at 4-5.)

Vázquez alleges that the Defendant Officers agreed to violate the Equal Protection Clause by treating him differently than the Residents. (R. 25, Second Am. Compl. ¶¶ 78, 80.) He fails to allege, however, any specific facts demonstrating the existence of an express or implied agreement among the Defendant Officers. The only facts in the complaint that can be construed to possibly support his conspiracy claim are his allegations that in October or November 2011, Officer LaPorte told him that "if the police received any more calls or reports involving the

15

Mason Manor Condominiums[,] 'they [would] be pinned on [him],'" (*id.* ¶ 32), and in June 2013, Officer Driscoll told him the police department was "'tired' of all the calls about [him]," (*id.* ¶ 63). Officer LaPorte's comment, however, does not indicate that the other three Defendant Officers also wanted to pin the complaints on Vázquez; the Court can only infer from this comment that Officer LaPorte intended to treat Vázquez differently. Similarly, the Court cannot plausibly infer that the four Defendant Officers agreed to conspire against Vázquez because, according to Officer Driscoll, the police department as a whole was tired of receiving calls about Vázquez. There are no allegations in the complaint from which the Court can infer that the other officers were aware of Officer LaPorte's or Officer Discroll's comments, or that the other officers agreed with Officer LaPorte's and Officer Discroll's sentiments. Aside from the fact that they are all Village police officers, there are no allegations in the complaint indicating that the Defendant Officers interacted with each other. Importantly, there are no alleged facts indicating that all four officers acted together or communicated in any way when inadequately investigating the various complaints and arresting Vázquez; instead, Officer Herrera, Officer Driscoll, and Detective Ptak each individually filed charges against Vázquez, (*id.* ¶¶ 36, 41, 45, 49, 64).

Viewing all the facts in the complaint in the light most favorable to Vazquez, the Court cannot plausibly infer that the four Defendant Officers had an implicit agreement to treat Vázquez differently than the Residents. Without more than a conclusory allegation that the Defendant Officers had an agreement, Vázquez's conspiracy claim cannot survive a motion to dismiss. *See Gomez v. Garda CL Great Lakes, Inc.*, No. 13 C 1002, 2013 WL 4506938, at *5-6 (N.D. Ill. Aug. 23, 2013) (the plaintiffs failed to offer any factual allegations suggesting that the defendants were associated or communicated with each other and so the court found that their

allegation of an agreement between the defendants was conclusory and insufficient to set forth a plausible conspiracy claim); *Roehl v. Merrilees*, No. 11 C 4886, 2012 WL 1192093, at *8 (N.D. Ill Apr. 10, 2012) ("Plaintiff alleges the parties, purpose and date of the conspiracy, but fails to allege facts or circumstances upon which either an express or implied agreement between Defendants could be inferred "above the speculative level." (quoting *Twombly*, 550 U.S. at 555)).

Accordingly, the Court dismisses Count II. Vázquez may amend Count II if he is able to provide the Court with additional facts, which may be discerned during discovery, from which the Court can plausibly infer the existence of an agreement among the Defendant Officers.

### III. Whether Vázquez has sufficiently pleaded a *Monell* claim against the Village for municipal liability (Count III)

In Count III, Vázquez alleges a violation of his constitutional right to equal protection under the law against the Village. (R. 25, Second Am. Compl. ¶¶ 81-86.) Specifically, he alleges that the Village, by and through its Police Department, "deliberately engaged in a policy and practice of enforcing the law one-sidedly and not being impartial and evenhanded in arbitrating disputes between [him] and his neighbors." (*Id.* ¶¶ 83-84.)

A municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to hold a municipality liable for a section 1983 violation under *Monell*, a plaintiff must show: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Here, Vázquez does

17

not allege that the Village had an express policy that caused his constitutional deprivation. Nor does Vázquez allege that a person with final policymaking authority caused his constitutional deprivation. Thus, the Court must determine whether Vázquez has alleged a widespread practice that is sufficiently permanent and well-settled to constitute a *Monell* claim against the Village.

Defendants argue that Vázquez's *Monell* claim should be dismissed because he has not alleged facts to plausibly support a claim that he was subject to unconstitutional arrests as a result of a widespread practice. (R. 38-2, Defs.' Mot. Dismiss at 7-9.) The Seventh Circuit has not adopted "any bright-line rules defining a 'widespread custom or practice'" and "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). However, to allege a widespread practice, a plaintiff must plead facts that show "that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *see also Hall v. City of Chi.*, No. 12 C 6834, 2013 WL 5835932, at *6 (N.D. Ill. Oct. 30, 2013) (A plaintiff must allege "facts tending to show that the City policymakers were aware of the behavior of officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior." (quoting *Latuszkin v. City of Chi.*, 250 F.3d 502, 505 (7th Cir. 2001))). In order to survive a motion to dismiss, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice" that caused the violation of the plaintiff's constitutional rights. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation, citation, and alteration omitted); *see also Falk v. Perez*, No. 12 CV 1384 --- F. Supp. 2d ---, 2013 WL 5230632, at *13 (N.D. Ill. Sept. 12, 2013) (holding that

"bare allegations of a policy or custom are not . . . sufficient to satisfy" the showing of a widespread practice).

Vázquez alleges that the Village has "a policy and practice of enforcing the law one-sidedly and not being impartial and evenhanded in arbitrating disputes between [him] and his neighbors," thereby causing his constitutional deprivation. (R. 25, Second Am. Compl. ¶ 84.) Vázquez does not specifically allege in his complaint that this alleged policy is widespread; in his response, however, he appears to argue that it is. (R. 45, Pl.'s Resp. at 8-10.) Additionally, Vázquez argues that he "has alleged a series of bad acts which suggest that an official at the policy level of the Defendant Village was bound to have been aware of the individual Defendants' wrongdoing." (*Id.* at 10.) The factual support Vázquez provides for this claim are his allegations that the three Arresting Officers failed to adequately investigate four incidents before filing charges against him based on the Residents' complaints, (R. 25, Second Am. Compl. ¶¶ 34-36, 41-43, 45-47, 49-51, 60-65), and that they failed to adequately investigate three incidents before deciding not to file charges against Skotnicki based on Vázquez's complaints, (*id.* ¶¶ 53-55, 57-59, 80-65). Vázquez fails to allege, however, that other officers violated his constitutional rights. He also fails to allege that any supervising officer or police chief knew of or supported the Arresting Officers' actions. Further, he fails to allege that any Village official was aware of the Arresting Officers' actions. The allegations of unconstitutional misconduct on the part of three officers do not support Vázquez's allegations of a widespread practice. Nor can the Court infer from these allegations that any Village official was aware or should have been aware of the individual officer's wrongdoing. Simply put, the facts alleged do not allow the Court to "draw the reasonable inference that the [Village] maintained a policy, custom, or practice" that caused the violation of Vázquez's constitutional rights. *See McCauley*,

671 F.3d at 616; *see also White v. City of Chi.*, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) ("[p]laintiff has pleaded no facts that support a reasonable inference that the City engaged in a widespread practice" (internal quotations and citations omitted)); *Blakey v. City of Chi.*, No. 07 CV 1880, 2009 WL 28518367, at *3 (N.D. Ill. Aug. 28, 2009) (plaintiff failed to "allege that the policymakers of the municipality were the moving force behind the conduct, or that the conduct was so widespread that the policymakers should have been aware of it" and so his conclusory allegations were not sufficient to support a *Monell* claim).

Accordingly, the Court finds that Vázquez has not alleged sufficient facts to plead a *Monell* claim against the Village. The Court thus dismisses Count III. Vázquez may amend Count III if he is able to provide the Court with additional facts from which the Court can plausibly infer the existence of a widespread practice that caused his constitutional deprivations.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint (R. 38) is DENIED in part and GRANTED in part. In particular, Counts II and III are dismissed without prejudice. The Court grants Vázquez leave to amend these counts. Count I survives. The parties are directed to fully exhaust all settlement possibilities for the remaining claim prior to the next status date, which will be held on May 20, 2014, at 9:45 a.m.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: May 5, 2014**